**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-01824-MSK-KMT**

**IRMA BENNETT,**

      **Plaintiff,**

**v.**

**BRIAN M. MAHAN, D.O.;
BURT FOWLER, M.D.;
FRED JENNINGS, P.A.;
MEMORIAL HEALTH SYSTEM, an Enterprise of the City of Colorado Springs,
Colorado, doing business as MEMORIAL HOSPITAL,**

      **Defendants.**

_____

**OPINION AND ORDER DENYING DEFENDANTS FOWLER, JENNINGS,
AND MEMORIAL'S MOTIONS TO DISMISS, AND GRANTING
MOTION TO DISMISS DEFENDANT MAHAN**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Partial

Summary Judgment **(# 45)** on the Defendants' affirmative defense of governmental immunity,[1]

the Defendants' response **(# 48)**, and the Plaintiff's reply **(# 51)**; the parties Stipulated Motion to

Dismiss **(# 68)** claims against Defendant Mahan[2]; Defendants Jennings and Memorial Health

System's ("Memorial") Motion to Dismiss for Lack of Jurisdiction **(# 50)**, the Plaintiff's

---

[1] Because the Court addresses (and rejects) each Defendant's invocation of the doctrine of governmental immunity in the court of addressing their own motions to dismiss, the Court denies the Plaintiff's motion for summary judgment on that same issue as moot.

[2] That motion is granted and the claims against Defendant Mahan are dismissed. Defendant Mahan's Motion to Dismiss **(# 49)** is denied as moot.

1

response **(# 54)**, and Mr. Jennings and Memorial's reply **(# 56)**; and Defendant Fowler's Motion to Dismiss **(# 53)**, the Plaintiff's response **(# 54)**, and Dr. Fowler's reply **(# 55)**.

## FACTS

The instant motions turn on a procedural issue, and thus, the Court summarizes the underlying facts only briefly. On July 16, 2009, Dr. Mahan performed heart surgery on Thomas Bennett, the husband of the Plaintiff. In the following days, Mr. Bennett's condition deteriorated. At some point in time, Dr. Fowler assumed responsibility for Mr. Bennett's care. Mr. Bennett passed away from complications relating to the surgery on July 20, 2009. On July 13, 2011, the Plaintiff commenced this action, alleging claims of negligence against each of the named Defendants.

The issue presented by the instant motions concerns the sufficiency of the Notice of Claim filed by the Plaintiff pursuant to C.R.S. § 24-10-109. That notice, filed on December 29, 2009, recites, among other things, the following Statement of Factual Basis of Claim":

> On July 15, 2009, Thomas J. Bennett came under the care of Memorial Hospital as an inpatient. On July 15, 2009, he underwent a left heart catherization with coronary angiography. On Saturday, July 18, 2009, Memorial staff removed a drainage tube from his abdomen. On July 20, 2009, Mr. Bennett died. Autopsy results indicate the cause of death as excanguination subsequent [to] an abdominal wall hemorrhage, anticoagulant therapy, and aortic valve replacement. Memorial Health Systems, and its employees, failed to properly diagnose and treat Mr. Bennett for an abdominal wall hemorrhage, which ultimately caused his death.

Under the heading "Public Employee Involved," the Notice of Claim stated "One or more unknown employees at Memorial Health System." The Notice also provided a statement describing the nature of the injury – primarily, Mr. Bennett's death – and valued that injury at in

excess of $ 150,000.

Each of the parties has now moved for relief with regard to the Defendants' contention that the Notice of Claim was deficient.

## ANALYSIS

### A.  Standard of review

The parties' motions arise through different procedural vehicles - the Plaintiff moving for summary judgment on the Defendants' affirmative defense of governmental immunity, and the Defendants seeking dismissal for lack of subject-matter jurisdiction. Because determination of the Court's jurisdiction in this matter is a predicate to any other determination, the Defendants' Motions must be considered first.

In *Finnie v. Jefferson County School Dist.*, 79 P.3d 1253, 1258-59 (Colo. 2003), the Colorado Supreme Court explained that trial courts must resolve issues relating to immunity (of which the Notice of Claim procedure is a subset) prior to trial, "regardless of whether the notice compliance at issue is a jurisdictional prerequisite" or not. *Id.* at 1259-60 (explaining that timeliness of the Notice is a jurisdictional question, whereas issues relating to the contents of the Notice of defects in its delivery go to the sufficiency of the affirmative defense).  Thus, the Colorado Supreme Court requires that issues relating to Notices of Claim be adjudicated under a process effectively identical to that used by this Court in adjudicating motions made pursuant to Fed. R. Civ. P. 12(b)(1).  *Id.* (citing the similar C.R.C.P. 12(b)(1)).

Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.  *Ruiz v. McDonnell*, 299 F.3d

1173, 1180 (10th Cir. 2002), *citing Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir.1995). Where, as here, a Rule 12(b)(1) motion challenges the underlying facts of the case, the Court may not presume the truthfulness of the complaint's factual allegations; rather, the Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Sizova v. National Institute of Standards and Technology*, 282 F.3d 1320,1324 (10th Cir. 2002).

### B.  Notice of Claim

C.R.S. § 24-10-109 provides that a person claiming to have suffered an injury caused by a public employee must, within 182 days of the date of discovery of the injury, file a Notice of Claim containing: (i) the names and addresses of the claimant and his or her attorney, (ii) a concise statement of the factual basis of the claim, (iii) the name and address of any public employee involved, if known to the claimant, (iv) a concise statement of the nature and extent of the injury suffered; and (v) a statement of the amount of damages being requested.  C.R.S. § 24-10-109(1), (2)(a)-(e).  Although the timeliness requirement of the statute is jurisdictional and subject to the requirement of strict compliance, other issues, such as whether a Notice was delivered to the proper entity and whether its contents are adequate are subject to a substantial compliance standard.  *Finnie*, 79 P.3d at 1255-56; *City and County of Denver v. Crandall*, 161 P.3d 627, 632 n. 5 (Colo. 2007). "Substantial compliance" requires "a good faith effort to include, as far as is reasonably possible, the required information." *Awad v. Breeze*, 129 P.3d 1039, 1041 (Colo. App. 2005).

With these standards in mind, the Court turns to the particular defects cited by each of the Defendants:

1. Dr. Fowler

Dr. Fowler contends that the Plaintiff's Notice of Claim fails to demonstrate substantial compliance with the requirement that the Notice provide a concise statement of the factual basis of the claim and that it identify the name of any public employee known by the claimant to be involved.

The record indicates that, in both a pre-surgical consultation and again after completing the surgery, Dr. Mahan spoke to the Plaintiff and Mr. Bennett's family and advised tham that Dr. Fowler would be providing the post-surgical follow-up care for Mr. Bennett. The Court has reviewed the excerpts of the Plaintiff's deposition attached to the parties filings, and observes that the Plaintiff's only direct communication with Dr. Fowler occurred when Dr. Fowler advised the Plaintiff of Mr. Bennett's passing and discussed with her whether an autopsy should be requested.

The Court is not prepared to say, on the record here, that the Plaintiff's failure to specifically identify Dr. Fowler in the Notice of Claim constitutes a violation of the statutory requirement, as there is insufficient evidence to suggest that the Plaintiff reasonably should have been able to identify him. Unlike her frequent and calm contacts with Dr. Mahan prior to the surgery, the Plaintiff had only one direct contact with Dr. Fowler, and that contact occurred under difficult emotional circumstances immediately following Mr. Bennett's passing. Although the Plaintiff testified in her deposition that she understood Dr. Fowler to be a partner or associate of Dr. Mahan's, the record does not reflect circumstances that would compel the conclusion that the Plaintiff would necessarily have recalled Dr. Fowler's name, much less that she affirmatively communicated his name to her attorney, as she admits doing with regard to Dr. Mahan.

Moreover, unlike Dr. Mahan, Dr. Fowler's name is not listed on Memorial Hospital's website as one of the on-staff doctors, and the record is unclear as to how easy it would have been for the Plaintiff's counsel to ascertain Dr. Fowler's status as a public employee. Under these circumstances, the Court cannot say that the failure to specifically identify Dr. Fowler in the Notice of Claim as a public employee involved in the incident warrants his dismissal.

Accordingly, the Court turns to Dr. Fowler's second argument: that the contents of the Notice of Claim deviate too much from the claims asserted in the Amended Complaint, such that it's notice was insufficient. As quoted above, the portion of the Notice of Claim that states the "factual basis of [the] claim" explains that Mr. Bennett underwent two surgical procedures (one prior to and one subsequent to the valve replacement surgery), and that he died a few days later. It notes that the autopsy concluded that Mr. Bennett died from blood loss subsequent to the surgery, and, most significantly, states the Plaintiff's theory that "Memorial Health Systems, and its employees, failed to properly diagnose and treat Mr. Bennett for an abdominal wall hemorrhage, which ultimately caused his death." The claims against Dr. Fowler in the Amended Complaint itemize the particular alleged faults of Dr. Fowler in finer detail, stating (among other things) that Dr. Fowler "fail[ed] to properly monitor and manage . . . Mr. Bennett's condition," "fail[ed] to order reasonable and appropriate tests and treatment for Mr. Bennett," "fail[ed] to reasonably and timely diagnose and treat Mr. Bennett's condition," etc., but that more particularized itemization of Dr. Fowler's alleged misconduct is not inconsistent with the Notice of Claim's more general statement that Dr. Fowler "failed to properly diagnose and treat Mr. Bennett."

As noted above, the question of "substantial compliance" with the Notice of Claim

statute's requirements must be assessed in light of the statute's goal of giving the public entity or employee reasonable notice of the anticipated claims, such that (among other things) a meaningful investigation into them can be promptly commenced. *Awad*, 129 P.3d at 1041. The Plaintiff's Notice of Claim met that burden with regard to Dr. Fowler. It informed Memorial that then-unknown[3] employees of Memorial who were involved with Mr. Bennett had been negligent in their diagnosis and treating him for the abdominal wall hemorrhage that ultimately caused his death. This gave Memorial sufficient notice of the injury being alleged (Mr. Bennett's death) and the misconduct leading to it (negligent diagnosis and treatment of an abdominal wall hemorrhage) such that Memorial could investigate the matter and ascertain which of its employees (if any) were involved in Mr. Bennett's treatment. Although the Notice might arguably have been more specific (or, insofar as it identified surgeries that may have been unrelated to the issue of the hemorrhage, less specific), it was sufficient to substantially comply with the statutory requirements. *See Crandall v. City and County of Denver*, 143 P.3d 1105, 1110 (Colo. App. 2006) (Notice of Claim that "gave the city sufficient information from which it could have investigated plaintiff's claims" was sufficient to achieve substantial compliance, even if it "could have been more specific as to location" of the defective condition), *rev'd on other grounds*, 161 P.3d 627 (Colo. 2007).

In this regard, the deviation between the Notice of Claim and the Complaint is far less significant than that in the primary case Dr. Fowler relies upon in his motion, *Miller v. Mountain Valley Ambulance Service*, 694 P.2d 362, 364 (Colo. App. 1984). In *Miller*, the plaintiffs'

---

[3]It is undisputed that Memorial responded to the Plaintiff's counsel's request for Mr. Bennett's health records prior to the date that the Notice of Claim was due.

decedent was severely injured when a ladder he was using to repair a roof came into contact with overhead power lines. He was still alive when taken by ambulance to the hospital, but died in transit. When the plaintiffs filed a Notice of Claim with the City of Colorado Springs, the basis of the claim stated was that the City had been negligent in "failing to insure that the power lines were so routed as to comply with [local building codes]." However, a few months later, an autopsy revealed that the decedent's cause of death was asphyxiation, and thus, when the plaintiffs commenced suit against the city, their theory of liability had changed to one in which the decendent's death "was caused by negligent care he received while being transported to the hospital." *Id.* at 363. The Court of Appeals affirmed the trial court's grant of judgment to the City, holding that "the statement of the 'basis of the claim' required by [the Notice of Claim statute] must put the public entity on notice of the theory on which a forthcoming lawsuit will rest," and that the plaintiffs' Notice of Claim had not done so.[4] *Id.* at 363-64.

*Miller* is factually distinguishable from the instant case. The conceptual difference between a Notice of Claim alleging negligence in the routing of power lines and a lawsuit alleging negligent medical treatment is far greater than the narrow (if even existent) conceptual difference between a Notice of Claim asserting improper medical diagnosis and treatment and a Complaint that alleges a variety of assertions, all of which fall within the general rubric of improper medical diagnosis and treatment. Accordingly, the Court finds that the Plaintiff's Notice of Claim gave sufficient notice to Memorial of the nature of the Plaintiff's claim such that

---

[4]The court was cognizant of the fact that the cause of the decedent's death was not discovered until after the Notice of Claim had been filed, but it faulted the plaintiffs for not thereafter amending the Notice to reflect the new theory of liability. *Id.* at 364.

"substantial compliance" with the statutory objectives were achieved.[5]  Dr. Fowler's motion to dismiss is therefore denied.

### 2. Mr. Jennings and Memorial

Mr. Jennings, a Physician's Assistant who treated Mr. Bennett, and Memorial itself move to dismiss the claims against them.  In all pertinent respects, the arguments of Mr. Jennings and Memorial mirror those offered by Dr. Fowler.[6]  The Court will not belabor the analysis through repetition.  It is sufficient to note that, as with Dr. Fowler, the record does not supply a basis to believe that the Plaintiff was aware of Mr. Jennings' identity prior to filing the Notice of Claim.  (Indeed, the undisputed testimony of the Plaintiff is that she never had any communication with Mr. Jennings whatsoever.)  Thus, the Plaintiff had no obligation to attempt to identify Mr. Jennings personally in the Notice of Claim.

As to any deviation between the statement of the claim in the Notice and the claims asserted against Mr. Jennings in the Amended Complaint, the analysis above with regard to Dr. Fowler applies with nearly equal force (the sole difference being that Mr. Jennings is alleged to

---

[5]Whether or not this resulted in sufficient notice to Dr. Fowler is a question the Court need not consider, given the Court's conclusion that the Plaintiff was not necessarily aware of Dr. Fowler's identity or his employment by Memorial such that specifically naming him was required by C.R.S. § 24-10-109(2)(c).  Because the Plaintiff properly gave notice of her claims to Memorial, as Dr. Fowler's employer, any deficiencies in conveying that notice to Dr. Fowler personally must be attributed to Memorial, not the Plaintiff.  Dr. Fowler has not argued, much less provided authority for the proposition, that an otherwise sufficient Notice of Claim given to the public employer, filed when the identity of the employee involved is unknown, must thereafter be amended to specifically name the employee once his or her identity has been discovered by the claimant.

[6]Mr. Jennings may also be making an argument that the Amended Complaint against him fails to state sufficient facts to give rise to a cognizable claim against him under Fed. R. Civ. P. 12(b)(6), but such an argument is insufficiently developed and the Court will not attempt to address it.

have been negligent solely with regard to his treatment of Mr. Bennett, not in making any mis-diagnosis). Accordingly, for the reasons previously stated, Mr. Jennings and Memorial's motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment **(# 45)** on the Defendants' affirmative defense of governmental immunity is **DENIED AS MOOT**. The parties' Joint Motion to Dismiss **(# 68)** claims against Dr. Mahan is **GRANTED**, and the claims against him are **DISMISSED WITH PREJUDICE**. Dr. Mahan's Motion to Dismiss for Lack of Subject-Matter Jurisdiction **(# 49)** is **DENIED AS MOOT.** Defendants Jennings and Memorial's Motion to Dismiss for Lack of Jurisdiction **(# 50)**, and Defendant Fowler's Motion to Dismiss **(# 53)** are **DENIED**.

Dated this 19th day of September, 2012

                                          **BY THE COURT:**

                                          Marcia S. Krieger
                                          United States District Judge